**Instrument between the United States of America and the Portuguese Republic
as contemplated by Article 3(3) of the Agreement on Mutual Legal Assistance
between
the United States of America and the European Union signed 25 June 2003**

1.　　As contemplated by Article 3(3) of the Agreement on Mutual Legal Assistance between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Mutual Legal Assistance Agreement"), the Governments of the United States of America and of the Portuguese Republic acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Mutual Legal Assistance Agreement is applied between them under the following terms:

(a)　(i) Article 4 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 1 of the Annex to this Instrument shall govern the identification of financial accounts and transactions;

(ii) Pursuant to Article 4(3) of the U.S.-EU Mutual Legal Assistance Agreement, requests for assistance under this Article shall be transmitted between, for the Portuguese Republic the Procuradoria Geral da República, and for the United States of America the attaché responsible for Portugal of the:

- U.S. Department of Justice, Drug Enforcement Administration, with respect to matters within its jurisdiction;
- U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, with respect to matters within its jurisdiction;
- U.S. Department of Justice, Federal Bureau of Investigation, with respect to all other matters.

(iii) Pursuant to Article 4(4) of the U.S.-EU Mutual Legal Assistance Agreement, the Portuguese Republic shall provide assistance with respect to organized crime, money laundering, drug trafficking, and terrorist activity, punishable under the laws of both the requesting and requested States, and with respect to such other criminal activity as the Portuguese Republic may notify the United States of America.  The United States of America shall provide assistance with respect to money laundering and terrorist activity punishable under the laws of both the requesting and requested States, and with respect to such other criminal activity as the United States of America may notify the Portuguese Republic.

(b)　Article 5 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 2 of the Annex to this Instrument shall govern the formation and activities of joint investigative teams;

(c)　Article 6 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 3 of the Annex to this Instrument shall govern the taking of testimony of a person located in the requested State by use of video transmission technology between the requesting and requested States;

(d)　Article 7 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 4 of the Annex to this Instrument shall govern the use of expedited means of communication;

(e)  (i) Article 8 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 5 of the Annex to this Instrument shall govern the providing of mutual legal assistance to the administrative authorities concerned;

(ii) Pursuant to Article 8(2)(b) of the U.S.-EU Mutual Legal Assistance Agreement, requests for assistance under this Article shall be transmitted between the United States Department of Justice and the Procuradoria Geral da República, or between such other authorities as may be agreed by the Department of Justice and Procuradoria Geral da República.

(f)  Article 9 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 6 of the Annex to this Instrument shall govern the limitation on use of information or evidence provided to the requesting State, and governing the conditioning or refusal of assistance on data protection grounds;

(g)  Article 10 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 7 of the Annex to this Instrument shall govern the circumstances under which a requesting State may seek the confidentiality of its request;

(h)  Article 13 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 8 of the Annex to this Instrument shall govern the invocation by the requested State of grounds for refusal.

2.     The Annex reflects the provisions of the U.S.-EU Mutual Legal Assistance Agreement that shall apply between the United States of America and the Portuguese Republic upon entry into force of this Instrument.

3.     In accordance with Article 12 of the U.S.-EU Mutual Legal Assistance Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

4.     This Instrument shall not apply to requests made prior to its entry into force; except that, in accordance with Article 12 of the U.S.-EU Mutual Legal Assistance Agreement, Articles 3 and 4 of the Annex shall be applicable to requests made prior to such entry into force.

5. (a)  This Instrument shall be subject to completion by the United States of America and the Portuguese Republic of their respective applicable internal procedures for entry into force. The Governments of the United States of America and of the Portuguese Republic shall thereupon exchange instruments indicating that such measures have been completed. This Instrument shall enter into force on the date of entry into force of the U.S.-EU Mutual Legal Assistance Agreement.

  (b)  In the event of termination of the U.S.-EU Mutual Legal Assistance Agreement, this Instrument shall be terminated.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at Washington, in duplicate, this 14th day of July 2005, in the English and Portuguese languages, both texts being equally authentic.

FOR THE UNITED STATES OF AMERICA:

FOR THE PORTUGUESE REPUBLIC:

3

ANNEX

### Article 1
### Identification of bank information

1 (a)   Upon request of the requesting State, the requested State shall, in accordance with the terms of this Article, promptly ascertain if the banks located in its territory possess information on whether an identified natural or legal person suspected of or charged with a criminal offense is the holder of a bank account or accounts. The requested State shall promptly communicate the results of its enquiries to the requesting State.

(b)   The actions described in subparagraph (a) may also be taken for the purpose of identifying:

(i)   information regarding natural or legal persons convicted of or otherwise involved in a criminal offense;

(ii)   information in the possession of non-bank financial institutions; or

(iii)   financial transactions unrelated to accounts.

2.   A request for information described in paragraph 1 of this Article shall include:

(a)   the identity of the natural or legal person relevant to locating such accounts or transactions;

(b)   sufficient information to enable the competent authority of the requested State to:

(i)   reasonably suspect that the natural or legal person concerned has engaged in a criminal offense and that banks or non-bank financial institutions in the territory of the requested State may have the information requested; and

(ii)   conclude that the information sought relates to the criminal investigation or proceeding; and

(c)   to the extent possible, information concerning which bank or non-bank financial institution may be involved, and other information the availability of which may aid in reducing the breadth of the enquiry.

3.   Unless subsequently modified by exchange of diplomatic notes between the European Union and the United States of America, requests for assistance under this Article shall be transmitted between:

(a)   for the Portuguese Republic, the Procuradoria Geral da República, and

(b)   For the United States of America, the attaché responsible for Portugal of the:

(i) U.S. Department of Justice, Drug Enforcement Administration, with respect to matters within its jurisdiction;

4

(ii) U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, with respect to matters within its jurisdiction;

(iii) U.S. Department of Justice, Federal Bureau of Investigation, with respect to all other matters.

4.    The Portuguese Republic shall provide assistance under this Article with respect to organized crime, money laundering, drug trafficking, and terrorist activity, punishable under the laws of both the requesting and requested States, and with respect to such other criminal activity as the Portuguese Republic may notify the United States of America. The United States of America shall provide assistance under this Article with respect to money laundering and terrorist activity punishable under the laws of both the requesting and requested States, and with respect to such other criminal activity as the United States of America may notify the Portuguese Republic.

5.    Assistance may not be refused under this Article on grounds of bank secrecy.

6.    The requested State shall respond to a request for production of the records concerning the accounts or transactions identified pursuant to this Article in accordance with the requirements of its domestic law.

### Article 2
### Joint investigative teams

1.    Joint investigative teams may be established and operated in the respective territories of the United States of America and Portugal for the purpose of facilitating criminal investigations or prosecutions involving the United States of America and one or more Member States of the European Union where deemed appropriate by the United States of America and the Portuguese Republic.

2.    The procedures under which the team is to operate, such as its composition, duration, location, organization, functions, purpose, and terms of participation of team members of a State in investigative activities taking place in another State's territory shall be as agreed between the competent authorities responsible for the investigation or prosecution of criminal offenses, as determined by the respective States concerned.

3.    The competent authorities determined by the respective States concerned shall communicate directly for the purposes of the establishment and operation of such team except that where the exceptional complexity, broad scope, or other circumstances involved are deemed to require more central coordination as to some or all aspects, the States may agree upon other appropriate channels of communications to that end.

4.    Where the joint investigative team needs investigative measures to be taken in one of the States setting up the team, a member of the team of that State may request its own competent authorities to take those measures without the other States having to submit a request for mutual legal assistance. The required legal standard for obtaining the measure in that State shall be the standard applicable to its domestic investigative activities.

### Article 3
### Video conferencing

1.  The use of video transmission technology shall be available between the United States of America and the Portuguese Republic for taking testimony in a proceeding for which mutual legal assistance is available of a witness or expert located in a requested State.  To the extent not specifically set forth in this Article, the modalities governing such procedure shall be as otherwise provided under the law of the requested State.

2.  Unless otherwise agreed by the requesting and requested States, the requesting State shall bear the costs associated with establishing and servicing the video transmission. Other costs arising in the course of providing assistance (including costs associated with travel of participants in the requested State) shall be borne as agreed upon by the requesting and requested States.

3.  The requesting and requested States may consult in order to facilitate resolution of legal, technical or logistical issues that may arise in the execution of the request.

4.  Without prejudice to any jurisdiction under the law of the requesting State, making an intentionally false statement or other misconduct of the witness or expert during the course of the video conference shall be punishable in the requested State in the same manner as if it had been committed in the course of its domestic proceedings.

5.  This Article is without prejudice to the use of other means for obtaining of testimony in the requested State available under applicable treaty or law.

6.  The requested State may permit the use of video conferencing technology for purposes other than those described in paragraph 1 of this Article, including for purposes of identification of persons or objects, or taking of investigative statements.

### Article 4
### Expedited transmission of requests

Requests for mutual legal assistance, and communications related thereto, may be made by expedited means of communications, including fax or e-mail, with formal confirmation to follow where required by the requested State. The requested State may respond to the request by any such expedited means of communication.

### Article 5
### Mutual legal assistance to administrative authorities

1.  Mutual legal assistance shall also be afforded to a national administrative authority, investigating conduct with a view to a criminal prosecution of the conduct, or referral of the conduct to criminal investigation or prosecution

6

authorities, pursuant to its specific administrative or regulatory authority to undertake such investigation. Mutual legal assistance may also be afforded to other administrative authorities under such circumstances. Assistance shall not be available for matters in which the administrative authority anticipates that no prosecution or referral, as applicable, will take place.

2.      Requests for assistance under this article shall be transmitted between the United States Department of Justice and the Procuradoria Geral da República, or between such other authorities as may be agreed by the Department of Justice and Procuradoria Geral da República.

### Article 6
### Limitations on use to protect personal and other data

1.      The requesting State may use any evidence or information obtained from the requested State:

(a)     for the purpose of its criminal investigations and proceedings;
(b)     for preventing an immediate and serious threat to its public security;
(c)     in its non-criminal judicial or administrative proceedings directly related to investigations or proceedings:
        (i)     set forth in subparagraph (a); or
        (ii)    for which mutual legal assistance was rendered under Article 5 of this Annex;
(d)     for any other purpose, if the information or evidence has been made public within the framework of proceedings for which they were transmitted, or in any of the situations described in subparagraphs (a), (b) and (c); and
(e)     for any other purpose, only with the prior consent of the requested State.

2. (a)  This Article shall not prejudice the ability of the requested State to impose additional conditions in a particular case where the particular request for assistance could not be complied with in the absence of such conditions. Where additional conditions have been imposed in accordance with this subparagraph, the requested State may require the requesting State to give information on the use made of the evidence or information.

(b)     Generic restrictions with respect to the legal standards of the requesting State for processing personal data may not be imposed by the requested State as a condition under subparagraph (a) to providing evidence or information.

3.      Where, following disclosure to the requesting State, the requested State becomes aware of circumstances that may cause it to seek an additional condition in a particular case, the requested State may consult with the requesting State to determine the extent to which the evidence and information can be protected.

### Article 7
### Requesting State's request for confidentiality

The requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the requesting State. If the request

cannot be executed without breaching the requested confidentiality, the central authority of the requested State (in the case of the United States of America, the United States Department of Justice, and in the case of the Portuguese Republic, the Procuradoria Geral da República) shall so inform the requesting State, which shall then determine whether the request should nevertheless be executed.

### Article 8
### Refusal of assistance

Subject to Article 1(5) and 6(2)(b) of this Annex, the provisions of this Annex are without prejudice to the invocation by the requested State of grounds for refusal of assistance available pursuant to its applicable legal principles, including where execution of the request would prejudice its sovereignty, security, ordre public or other essential interests.

8

**Instrumento entre os Estados Unidos da América e a República Portuguesa conforme n° 3 do artigo 3° do Acordo entre a União Europeia e o Estados Unidos da América sobre auxílio Judiciário Mútuo assinado a 25 de Junho de 2003**

1.     Em conformidade com o disposto no n° 3 do artigo 3° do Acordo entre a União Europeia e os Estados Unidos da América sobre Auxílio Judiciário Mútuo assinado a 25 de Junho de 2003 (doravante "Acordo UE-EUA sobre Auxílio Judiciário Mútuo"), os Estados Unidos da América e a República Portuguesa reconhecem que, de acordo com as disposições deste Instrumento, o Acordo UE-EUA sobre Auxílio Judiciário Mútuo, se aplica entre eles, de acordo com os seguintes termos:

(a) (i) O artigo 4° do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 1° do Anexo a este Instrumento, regula a identificação de contas e transacções financeiras;

      (ii) Nos termos do n° 3 do artigo 4 do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, os pedidos de auxílio ao abrigo deste artigo devem ser transmitidos entre, relativamente à República Portuguesa, a Procuradoria Geral da República, e relativamente aos Estados Unidos da América, o *Attaché* responsável para Portugal do
            - Departamento de Justiça dos Estados Unidos, Departamento e Investigação e Tráfego de Estupefacientes, nas matérias da sua competência;
            - Departamento de Assuntos Internos e Segurança, Departamento de Imigração e Alfandegas, nas matérias da sua competência;
            - Departamento de Justiça dos Estados Unidos, Departamento Federal de Investigação, nas restantes matérias.

      (iii) Nos termos do n° 4 do artigo 4° do Acordo UE-EUA sobre Auxílio Judiciário Mútuo a República Portuguesa deve prestar auxílio, relativamente a actividades de crime organizado, branqueamento de capitais, tráfico de droga e terrorismo, puníveis de acordo com as lei de ambos os Estados requerente e requerido e relativamente a quaisquer outras actividades criminosas que a República Portuguesa notifique os Estados Unidos da América;
Os Estados Unidos da América devem prestar auxílio relativamente a actividades de branqueamento de capitais e terrorismo, puníveis de acordo com as lei de ambos os Estados requerente e requerido, e relativamente a quaisquer outras actividades criminosas de que os Estados Unidos da América notifiquem a República Portuguesa.

(b) O artigo 5° do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 2° do Anexo a este Instrumento, regula a formação e actividades de equipas de investigação conjuntas;

(c) O artigo 6° do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 3° do Anexo a este Instrumento, regula a prestação de testemunho de uma pessoa localizada no Estado requerido através da utilização da tecnologia da transmissão por vídeo entre o Estado requerente e o Estado requerido;

1

(d) O artigo 7º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 4º do Anexo a este Instrumento, regula o uso de meios expeditos de comunicação;

(e) (i) O artigo 8º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 5º do Anexo a este Instrumento, regula a prestação de auxílio judiciário mútuo às autoridades administrativas interessadas;

(ii) Nos termos da alínea b) do nº 2 do artigo 8 do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, os pedidos de auxílio judiciário apresentados ao abrigo do presente artigo, devem ser transmitidos entre a Procuradoria Geral da República e o Departamento de Justiça dos Estados Unidos, ou entre outras autoridades que a Procuradoria Geral da República e o Departamento de Justiça dos Estados Unidos tenham designado de comum acordo.

(f) O artigo 9º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 6º do Anexo a este Instrumento, regula a limitação do uso de informações ou provas fornecidas ao Estado requerente e a prestação condicional ou a recusa de prestação de auxílio por motivos relacionados com a protecção de dados;

(g) O artigo 10º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 7º do Anexo a este Instrumento, regula as circunstâncias em que o Estado requerente pode solicitar a confidencialidade do pedido;

(h) O artigo 13º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 8º do Anexo a este Instrumento, regula a invocação pelo Estado requerido de motivos de recusa.

2. O Anexo reflecte as disposições do Acordo UE-EUA sobre Auxílio Judiciário Mútuo aplicáveis entre a República Portuguesa e os Estados Unidos da América após a entrada em vigor deste Instrumento.

3. Nos termos do artigo 12º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo este Instrumento é aplicável às infracções cometidas antes e depois da sua entrada em vigor.

4. Este Instrumento não é aplicável aos pedidos de auxílio apresentados antes da sua entrada em vigor; todavia, nos termos do artigo 12º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, os artigos 3º e 4º do Anexo são aplicáveis aos pedidos de auxílio apresentados antes dessa entrada em vigor.

5. (a) Este Instrumento está sujeito ao cumprimento pela República Portuguesa e pelo Estados Unidos da América das respectivas formalidades internas aplicáveis para a sua entrada em vigor. Os Governos da República Portuguesa e dos Estados Unidos da América em seguida trocarão instrumentos declarando que tal procedimento foi concluído. Este Instrumento entra em vigor na data da entrada em vigor do Acordo UE-EUA sobre Auxílio Judiciário Mútuo.
(b) No caso de cessação do Acordo UE-EUA sobre Auxílio Judiciário Mútuo este Instrumento cessa.

2

EM FÉ DO QUE, os abaixo assinados, devidamente autorizados pelos respectivos Governos, assinaram este Instrumento.

Feito em Washington DC, no 14° dia do mês de Julho do ano de 2005, em dois exemplares, nas línguas Portuguesa e Inglesa, fazendo fé qualquer dos textos.


Pelos Estados Unidos da América                    Pela   República   Portuguesa

3

## ANEXO

### Artigo 1º
#### Identificação de Informação bancária

1.      a) A pedido do Estado requerente, o Estado requerido deve, nos termos do presente artigo, determinar rapidamente se os bancos localizados no seu território possuem informações sobre a titularidade de uma ou mais contas bancárias por uma determinada pessoa singular ou colectiva identificada, suspeita ou acusada da prática de uma infracção penal. O Estado requerido deve comunicar rapidamente ao Estado requerente os resultados das averiguações efectuadas.

b) As medidas a que se refere a alínea a) também podem ser tomadas para efeitos de identificação de:
    i) informações relativas a pessoas singulares ou colectivas condenadas ou de outro modo envolvidas na prática de uma infracção penal,
    ii) informações na posse de instituições financeiras não bancárias, ou
    iii) transacções financeiras não relacionadas com contas bancárias.

2. Os pedidos de informação a que se refere o n.º 1 devem conter:
a) A identidade da pessoa singular ou colectiva relevante para a localização das referidas contas ou transacções; e
  b) Elementos bastantes para permitir à autoridade competente do Estado requerido:
  i) ter motivos fundados para suspeitar que a pessoa singular ou colectiva em questão está envolvida na prática de uma infracção penal e que os bancos ou as instituições financeiras não bancárias no território do Estado requerido podem possuir a informação solicitada; e
  ii) concluir que as informações pretendidas se relacionam com a investigação ou o processo penal;
c) Na medida do possível, informações sobre os bancos ou instituições financeiras não bancárias eventualmente envolvidos, bem como outras informações cuja disponibilidade possa contribuir para circunscrever o âmbito das averiguações.

3. A não ser que subsequentemente modificado por troca de notas diplomáticas entre a União Europeia e os Estados Unidos da América, os pedidos de auxílio apresentados nos termos do presente artigo devem ser transmitidos entre:
a) relativamente à República Portuguesa, a Procuradoria Geral da República;
b) relativamente aos Estados Unidos da América, o *Attaché* responsável para Portugal do:
(i)     Departamento de Justiça dos Estados Unidos, Departamento e Investigação e Tráfego de Estupefacientes, nas matérias da sua competência;
(ii)    Departamento de Assuntos Internos e Segurança, Departamento de Imigração e Alfandegas, nas matérias da sua competência;
(iii)   Departamento de Justiça dos Estados Unidos, Departamento Federal de Investigação, nas restantes matérias.

4

4. A República Portuguesa deve prestar auxílio, nos termos deste artigo, relativamente a actividades de crime organizado, branqueamento de capitais, tráfico de droga e terrorismo, puníveis de acordo com as lei de ambos os Estados requerente e requerido, e relativamente a quaisquer outras actividades criminosas que a República Portuguesa notifique os Estados Unidos da América;

Os Estados Unidos da América devem prestar auxílio, nos termos deste artigo, relativamente a actividades de branqueamento de capitais e terrorismo, puníveis de acordo com as lei de ambos os Estados requerente e requerido, e relativamente a quaisquer outras actividades criminosas de que os Estados Unidos da América notifiquem a República Portuguesa.

5.      O auxílio nos termos do presente artigo não pode ser recusado com fundamento no sigilo bancário.

6.      O Estado requerido deve responder a um pedido de apresentação dos registos relativos às contas ou transacções identificadas, nos termos deste artigo, em conformidade com os requisitos da sua lei interna.

### Artigo 2
### Equipas de investigação conjuntas

1. Podem ser criadas e funcionar nos territórios respectivos de Portugal e dos Estados Unidos da América equipas de investigação conjuntas, a fim de facilitar as investigações ou os procedimentos penais que envolvam um ou mais Estados-Membros da União Europeia e os Estados Unidos da América, quando a República Portuguesa e os Estados Unidos da América o considerem conveniente.

2.      As disposições a que deve obedecer o funcionamento das equipas, designadamente em matéria de composição, duração, localização, organização, funções, fins e termos da participação de membros da equipa de um Estado nas actividades de investigação que têm lugar no território de outro Estado, devem ser acordadas entre as autoridades competentes responsáveis pela investigação das infracções penais e pela promoção da acção penal, tal como determinadas pelos respectivos Estados interessados.

3.      As autoridades competentes determinadas pelos respectivos Estados interessados devem comunicar directamente entre si para fins de criação e funcionamento dessas equipas, excepto quando se considere que a excepcional complexidade ou a grande amplitude do âmbito das investigações ou outras circunstâncias exigem uma maior coordenação a nível central em relação a parte ou à totalidade dos aspectos das investigações, podendo neste caso os Estados acordar em utilizar outros canais de comunicação para esse fim.

5

4.      Quando a equipa de investigação conjunta tiver necessidade de que sejam tomadas medidas de investigação num dos Estados que participam na criação da equipa, um membro da equipa originário desse Estado pode solicitar às suas próprias autoridades competentes que tomem essas medidas, sem que os outros Estados tenham de apresentar um pedido de auxílio judiciário mútuo. O critério legal a aplicar para a obtenção da medida nesse Estado deve ser o critério aplicável às actividades de investigação a nível nacional.

### Artigo 3
#### Videoconferência

1.      A utilização de tecnologia de transmissão por vídeo deve estar disponível entre a República Portuguesa e os Estados Unidos da América para a recolha de depoimentos, no quadro de um processo no qual seja facultado auxílio judiciário mútuo, de testemunhas ou peritos situados no Estado requerido. Na medida em que o presente artigo não contenha disposições específicas a esse respeito, as regras a que deve obedecer o referido procedimento são as previstas na lei do Estado requerido.

2.      Salvo acordo em contrário entre os Estados requerente e requerido, o Estado requerente deve suportar os custos inerentes ao estabelecimento e à realização da transmissão por vídeo. Os outros custos decorrentes da prestação de auxílio (incluindo os custos inerentes às deslocações de participantes no Estado requerido) são suportados consoante o que for acordado pelos Estados requerente e requerido.

3.      Os Estados requerente e requerido podem concertar-se para facilitar a resolução das questões jurídicas, técnicas ou logísticas que possam ser suscitadas pela execução do pedido.

4.      Sem prejuízo de quaisquer competências previstas na lei do Estado requerente, a produção de declarações intencionalmente falsas ou outra conduta ilícita de testemunhas ou peritos durante a videoconferência deve ser punível no Estado requerido de forma idêntica à que ocorreria se a mesma conduta se verificasse no quadro de um processo nacional.

5.      O presente artigo não prejudica a utilização de outros meios de recolha de depoimentos no Estado requerido disponíveis nos termos de tratado ou de lei aplicável.

6.      O Estado requerido pode permitir a utilização de tecnologia de videoconferência para fins diversos dos referidos no n.º 1 deste artigo, incluindo fins de identificação de pessoas ou objectos, ou de recolha de depoimentos no quadro de investigações.

6

### Artigo 4
#### Transmissão de pedidos por meios expeditos

Os pedidos de auxílio judiciário mútuo e as comunicações com eles relacionadas podem efectuar-se por meios expeditos de comunicação, incluindo o fax ou o correio electrónico, com confirmação formal subsequente nos casos em que tal seja solicitado pelo Estado requerido. O Estado requerido pode responder ao pedido por qualquer dos referidos meios expeditos de comunicação.

### Artigo 5
#### Prestação de auxílio judiciário mútuo às autoridades administrativas

1. É igualmente prestado auxílio judiciário a uma autoridade administrativa que esteja a investigar determinada conduta para fins da correspondente acção penal ou para remessa do processo relativo a essa conduta às autoridades responsáveis pela investigação ou pela promoção da acção penal por força de uma autoridade específica, de natureza administrativa ou regulamentar, de que disponha para efectuar essas investigações. Pode igualmente ser prestado auxílio judiciário a outras autoridades administrativas nessas circunstâncias. Não será prestado auxílio judiciário em matérias relativamente às quais a autoridade administrativa preveja que não haverá lugar a processo penal ou à remessa de qualquer processo, consoante o caso.

2. Os pedidos de auxílio judiciário apresentados ao abrigo do presente artigo devem ser transmitidos entre a Procuradoria Geral da República e o Departamento de Justiça dos Estados Unidos, ou entre outras autoridades que a Procuradoria Geral da República e o Departamento de Justiça dos Estados Unidos tenham designado de comum acordo.

7

### Artigo 6
### Limitações de utilização para protecção de dados pessoais e outros

1. O Estado requerente pode utilizar quaisquer provas ou informações transmitidas pelo Estado requerido:
a) Para fins de investigações e processos penais;
b) Para prevenir ameaças graves e imediatas à sua segurança pública;
c) Nos seus processos judiciais ou administrativos de natureza não penal directamente relacionados com as investigações ou processos:
  i) a que se refere a alínea a), ou
  ii) para os quais foi prestado auxílio judiciário nos termos do artigo 5 deste anexo;
d) Para quaisquer outros fins, se as informações ou provas tiverem sido tornadas públicas no quadro do processo para o qual foram transmitidas, ou em qualquer das situações a que se referem as alíneas a), b) e c); e
e) Para quaisquer outros fins, apenas com o consentimento prévio do Estado requerido.

2. a) O presente artigo não prejudica a possibilidade de o Estado requerido impor condições adicionais em casos específicos, quando não seja possível atender a um determinado pedido na falta dessas condições. Quando tenham sido impostas condições adicionais ao abrigo da presente alínea, o Estado requerido pode solicitar ao Estado requerente que preste informações sobre a utilização dada às provas ou informações.
  b) O Estado requerido não pode impor limitações genéricas relativamente às normas legais do Estado requerente aplicáveis ao tratamento de dados pessoais como condição para o fornecimento de provas ou informações nos termos da alínea a).

3. Quando, após a divulgação ao Estado requerente, o Estado requerido tomar conhecimento da existência de circunstâncias que o poderão levar a solicitar a aplicação de uma condição adicional num caso particular, o Estado requerido pode consultar o Estado requerente para determinar em que medida as provas e informações poderão ser protegidas.


### Artigo 7º
### Pedido de confidencialidade do Estado requerente

O Estado requerido deve envidar todos os esforços para manter a confidencialidade de um pedido e do seu conteúdo, se essa confidencialidade for solicitada pelo Estado requerente. Se o pedido não puder ser executado sem quebra da confidencialidade solicitada, a autoridade central do Estado requerido (no caso da República Portuguesa a Procuradoria Geral da República e no caso dos Estados Unidos da América, o Departamento de Justiça dos Estados Unidos) deve informar do facto o Estado requerente, que determinará se o pedido deve ser, apesar de tudo, executado.

8

**Artigo 8**
**Recusa de auxílio**

Sob reserva do n.º 5 do artigo 1.º e da alínea b) do n.º 2 do artigo 6, do presente anexo, as disposições deste anexo não obstam a que o Estado requerido invoque motivos de recusa de auxílio conformes com os princípios jurídicos aplicáveis nesse Estado, nomeadamente quando a execução do pedido possa prejudicar a sua soberania, a sua segurança, a sua ordem pública ou os seus interesses fundamentais.

9