UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

IN RE: Request from Portugal Pursuant
To the Agreement Between the Government
of the United States of America and the
European Union on Mutual Legal Assistance
In Criminal Matters in the Matter of
Luis Felipe Scolari
_____/

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER

The United States is seeking an order appointing a person as a commissioner to collect evidence requested by the Republic of Portugal in its attached request (the "Request") made pursuant to the U.S.-EU Mutual Legal Assistance Agreement, entered into force February 1, 2010 (the "Agreement"), and to seek other orders, as needed, to execute the request as authorized by 18 U.S.C. § 3512.  A copy of the Request is attached as Exhibit 1, and a copy of the Agreement is attached as Exhibit 2.

As set forth in the Request, the Republic of Portugal makes this Request in connection with a criminal investigation.  Specifically, the Criminal Investigation and Prosecution Department in Lisbon, Portugal is conducting a criminal investigation to determine whether Luis Felipe Scolari ("Scolari"), the head coach of the Portuguese Soccer National Team, failed to report income to the Portuguese Tax Revenue Administration ("PTRA").

According to Portuguese authorities, between 2003 and 2008, Flamboyant Sports, a Dutch company, Chaterella Investors Limited ("CIL") a British company, and Taliston Financial Corp. ("TFC"), a British Virgin Island company, owned, at various times, non-exclusive rights to the use of Scolari's name, image, and voice. Accordingly, on January 1, 2003, Flamboyant Sports

signed a contract, which was initialed by Scolari, granting NIKE European Operations Netherlands B.V. the non-exclusive right to use Scolari's name, image and voice for months for €200,000. Thereafter, between January 2, 2003, and September 1, 2008, CIL signed various contracts granting the Portuguese Football Federation ("PFF") and two Portuguese banks, Banco Portuges De Negocios, S.A., ("BPN") and Caixa De Depositos ("CGD"), the non-exclusive right to use Scolari's name, voice, and image for funds totaling more than €7 million.

In the meantime, in July 2006, TFC signed a contract, which was also signed by Scolari, granting CIL its non-exclusive right use Scolari's name, voice, and image for €3.4 million. According to the latter contract, Scolari was entitled to of the funds and of any subsequent funds CIL obtained by exercising its rights under the contract.  Although Scolari was a resident of, and employed in, Portugal between 2003 and 2008, and, hence, was required to report all of his income to the PTRA, the PTRA confirmed that Scolari did not report any income from the sale of his "image rights", except €255,000 that he earned in 2007.

During the investigation, Portuguese authorities obtained bank records which reflect (1) that between January 31, 2003, and June 1, 2008, €7,225,438.59 was transferred from accounts held by PFF, BPN, and CGD to an account held by CIL, at Credit Lyonnais, Miami; (2) that on March 1, 2004, €200,000 was transferred from an account held by Scolari at BPN to an account held by Flamboyant Sports, at Credit Lyonnais - Miami; (3) that between May 22, 2006, and June 30, 2008, €1,875,000 was transferred from accounts held by Scolari at BPN and CGD to an account held by Scolari, at Credit Lyonnais, Miami; (4) that between December 27, 2004, and July 3, 2008, €1,860,000 was transferred from accounts held by Scolari at BPN and CGD to an account held by Scolari's son at BPN, and on May 25, 2009, a portion of these funds, €1,315,000, was transferred to an account held by Scolari's son, at Credit Lyonnais, Miami; and

(5) that between January 2, 2007, and December 24, 2007, €255,000 was transferred from an account held by CIL, at Credit Lyonnais, Miami to Scolari's account, at Credit Lyonnais, Miami.

Portuguese authorities also obtained CIL business records that set forth CIL receipts and payments. These records reflect that between January 9, 2006, and January 6, 2008, CIL transferred €3,060,000 million to an account held by TFC, at Credit Lyonnais, Miami.

To further the investigation, Portuguese authorities have asked the United States to provide bank records relating to the accounts at Credit Lyonnais, Miami, FL.

Federal courts, pursuant to the Agreement, statute and their inherent authority, may issue orders as may be necessary for the production of the evidence requested by the Republic of Portugal, including orders appointing a person as commissioner to gather such evidence and establishing the procedures for the production of such evidence.

A.  Statutory Authority Grounding Execution of Requests for Assistance

On October 19, 2009, the President signed the Foreign Evidence Request Efficiency Act of 2009 (Public Law 111-79), enacting 18 U.S.C. § 3512, the full text of which is attached for the convenience of this Court.  Section 3512 explicitly authorizes a federal court to:

> issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

Section 3512 directly empowers the federal courts to execute such requests and separately codifies under Title 18 the longstanding practice and procedures employed by the United States and the federal courts to execute requests by foreign authorities for assistance to the fullest extent possible under U.S. law.  Congress enacted Section 3512 to make it "easier for the United States to respond to these requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme."  155 CONG. REC.  S6,810 (2009)(Statement of

3

Sen. Whitehouse).

B.    Execution of Foreign Requests for Assistance Under Section 3512

    1.    Authorization of the Application to This Court

Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation and prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing and restitution.

For purposes of Section 3512, an application is "duly authorized by an appropriate official of the Department of Justice" when the Department of Justice, Criminal Division, Office of International Affairs, has reviewed and authorized the request and is executing the request itself or has delegated the execution to another attorney for the government. In this matter, such authorization and delegation is evidenced by a letter from the Department of Justice, Criminal Division, Office of International Affairs, received by the United States Attorney, transmitting the Request to this district for execution.

Section 3512(c) authorizes filing the instant application this district where evidence is believed to be located.

    2.    Foreign Authority Seeking Assistance Within Section 3512 and the Agreement

As to the "foreign authority" making the Request, Section 3512 provides:

> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

4

In this matter the Central Department of Criminal Investigation and prosecution in Lisbon, Portugal is the foreign authority making the Request.

Historically, foreign requests for judicial assistance may be made by a foreign court or tribunal, including an investigating magistrate or judge instruction.  In re Letter of Request from the Government of France, 139 F.R.D. 588, 590-591 (S.D.N.Y. 1991); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 405-406 (S.D. Fla. 1987).  The language of Section 3512 clearly encompasses those entities and persons within the meaning of "foreign authority" as well as those persons traditionally deemed an "interested person," such as a foreign public prosecutor.  In re Letters Rogatory from the Tokyo District Prosecutor's Office, Tokyo, Japan, 16 F.3d 1016, 1019 (9th Cir. 1994); In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 690 (D.C. Cir. 1989); In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 648 F. Supp. 464, 466 (S.D. Fla. 1986), aff'd, 848 F.2d 1151, 1154 (11th Cir. 1988), cert. denied, 488 U.S. 1005 (1989).

As evidenced by the Request itself and confirmed in the authorization process and again by the undersigned, consistent with Section 3512(a)(1), the foreign authority seeks assistance in the investigation or prosecution of criminal offenses or in proceedings related to the prosecution of criminal offenses.

       3.     Authority of the Federal Courts Under Section 3512

When enacting Section 3512, Congress intended that federal courts facilitate to the fullest extent possible the execution of requests by foreign authorities for assistance in criminal matters and endeavored to streamline and expedite the execution of such requests.  Section 3512 authorizes federal courts to issue "such orders as may be necessary to execute a request" and

specifically includes: orders for search warrants pursuant to Federal Rule of Criminal Procedure 41; orders for stored wire or electronic communications and related evidence under 18 U.S.C. § 2703; orders for pen registers and trap and trace devices under 18 U.S.C. § 3123; orders for the provision of testimony or a statement or the production of documents or other things, or both; and orders appointing "a person" to direct the taking of testimony or statements or the production of documents or other things, or both.   18 U.S.C. § 3512(a)(1), (2).

The assistance requested by the Republic of Portugal by its Criminal Investigation and Prosecution Department falls squarely within that contemplated by Section 3512.

C.   Appointment of a Person as Commissioner to Collect Evidence

    1.   Statutory Authorization.

Section 3512 (b) provides that a federal judge may "issue an order appointing a person to direct the taking of testimony or statements or of the production of documents or other things, or both." The statute further authorizes the person appointed to issue orders requiring the appearance of a person, or the production of documents or other things, or both; administer any necessary oath; and take testimony or statements and receive documents or other things. Commensurate with past practice under 28 U.S.C. § 1782, it is anticipated that a federal court would appoint an Attorney for the Government, typically a federal prosecutor, as "commissioner."

    2. Procedures for Evidence Collection

Section 3512(a) specifically empowers a federal judge to issue "such orders as may be necessary" to execute the request. This authorization encompasses orders specifying the procedures to be used to collect particular evidence, including procedures requested by the foreign authority to facilitate its later use of the evidence. Nothing in Section 3512 suggests any

6

limitation on a court's power to exercise "complete discretion in prescribing the procedure to be followed" as was available under 28 U.S.C. § 1782. In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 693 (D.C. Cir. 1989), citing 1964 U.S.C.C.A.N. at 3789. See White v. National Football League, et al., 41 F.3d 402, 409 (8th Cir. 1994), cert. denied, 515 U.S. 1137 (1995) (a court may issue whatever process it deems necessary to facilitate disposition of a matter before it); FED.R.CRIM.P. 57(b).

      a.    Procedures Authorized by Other Statutes.

In addition, Section 3512 references specific U.S. laws for obtaining certain evidence and, by doing so, adopts any statutorily mandated procedures in relation to obtaining orders for search warrants; orders for contents of stored wire or electronic communications or for records related thereto; and orders for a pen register or a trap and trace device.

      b.    Orders by the Person Appointed; Commissioner Subpoenas

Section 3512 authorizes the "person" appointed (here and in past practice under 28 U.S.C. § 1782, the "commissioner") to issue orders "requiring the appearance of a person, or the production of documents or other things or both." A district court has "complete discretion in prescribing the procedure to be followed."

If a federal district court so orders, the commissioner may use the attached form Exhibit 3, entitled "commissioner's subpoena," to obtain the requested evidence. See In re: Commissioner's Subpoenas, 325 F.3d 1287, 1291 (2d Cir. 1993) (incorporating in pertinent part a district court's order directing use of commissioner's subpoenas); United States v. Erato, 2 F.3d 11, 13-14 (2d Cir. 1993) (same). This commissioner's subpoena is simply a version of the "order" to be issued by the person appointed by the court under Section 3512 to direct the production of evidence. Section 3512 expressly authorizes the service and enforcement of such

orders or commissioner's subpoenas anywhere in the United States (i.e., coextensive with the service of subpoenas in U.S. criminal investigations and prosecutions).

      c.      Notice of Evidence Taking

As an initial matter, this application is being made ex parte, consistent with U.S. practice in its domestic criminal matters and its prior practice on behalf of foreign authorities under 28 U.S.C. § 1782. In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 688 (D.C. Cir. 1989); In re Letters Rogatory from the Tokyo District, Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).

Section 3512 authorizes use of compulsory process in the execution of foreign assistance requests comparable or similar to that used in domestic criminal investigations or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any party other than the recipients (i.e., no notice to targets or defendants), orders and commissioner's subpoenas issued in execution of foreign assistance requests pursuant to Section 3512 likewise should require no notice other than to the recipients. In the absence of a specific request to provide notice, a district court and U.S. authorities can assume that a requesting foreign authority has provided such notice as the foreign law requires, or that foreign law does not require notice and the requesting foreign authority does not consider notice to be necessary or useful. Accordingly, a federal district court should authorize a commissioner to collect the evidence requested without notice to any party other than the recipient of the commissioner's subpoena except to the extent that a request asks for specific notice procedures.

      d.      Right to Financial Privacy Act

The Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., does not apply to execution of foreign legal assistance requests. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987); In re Letters of Request from the Supreme Court of Hong Kong, 821 F.Supp. 204, 211 (S.D.N.Y. 1993). Consequently, to the extent that execution of a request entails production of bank or financial records, notice provisions of the Act do not apply, and the Commissioner need not give, nor arrange for the custodian of records to give, notice to an account holder. (Note that the Act itself applies only to accounts maintained in a person's name and not to corporate, perhaps even partnership, accounts. United States v. Daccarett, 6 F.3d 37, 50-52 (2d Cir. 1993).)

      Conclusion

The instant request is exactly the type of request contemplated for execution under Section 3512. In its sequential legislative efforts relevant to the provision of assistance to foreign authorities, Congress has intended that the United States set an example to other nations by making judicial assistance generously available. See, e.g., In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d 1151, 1153-1154 (11th Cir. 1988), cert. denied, 488 U.S. 1005 (1989). Section 3512 enables the United States to respond "more quickly . . . to foreign evidence requests. These efforts will assist the United States with its investigations as foreign authorities will be urged to respond in kind to our evidence requests in a speedy manner." 155 CONG. REC. H10,093 (2009)(Statement of Rep. Schiff).

Accordingly, to execute this Request and in the interests of comity, the Government moves this Court to issue the attached order pursuant to 18 U.S.C. § 3512 appointing the

undersigned Assistant U.S. Attorney as commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, to obtain the evidence requested, to adopt such procedures in receipt of the evidence as are consistent with the intended use thereof.

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

Dated:  5/5/2014       By:   *s/Sean P. Cronin*
        SEAN P. CRONIN
        Assistant United States Attorney
        Court No.  A5500940
        99 NE 4th Street
        Miami, FL 33132
        Tel# (305) 961-9194
        Email:  Sean.P.Cronin@usdoj.gov